UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

STEPHEN HEINEMANN and SHARILYN
HEINEMANN,

                                    NO. CIV. 07-0018-FCD-DAD

          PlaintiffS,

     v.                             <u>MEMORANDUM AND ORDER</u>

COPPERHILL APARTMENTS; THE
GARABALDI COMPANY; JOHN L.
EVILSIZOR; MARY A. EVILSIZOR;
and KENNETH A. EVILSIZOR; and
DOES 1 through 50, inclusive,

          Defendants.

----oo0oo----

     This matter is before the court on defendants Copperhill
Apartments, John L. Evilsizor, Mary A. Evilsizor, and Kenneth A.
Evilsizor's motion to dismiss plaintiff's First Amended Complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]
Plaintiffs oppose defendants' motion.  For the reasons set forth
below,[2] defendants' motion to dismiss is DENIED.

---

     [1]   All further references to a "Rule" are to the Federal
Rules of Civil Procedure.

     [2]   Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
E.D. Cal. Local Rule 78-230(h).

**BACKGROUND**[3]

**A.   Handicapped Parking Spaces**

Plaintiff Stephen Heinemann ("plaintiff" or "Heinemann") is physically disabled. (FAC ¶ 2). At a young age, Heinemann had to have the lower half of his left leg amputated. (Id. ¶ 19). He now wears a prosthetic leg to assist him in walking. (Id.) In 2001, Heinemann moved into the defendant Copperhill Apartments ("Copperhill") in El Dorado Hills, CA. (Id. ¶ 19). Copperhill is owned and/or operated by defendants John L. Evilsizor, Mary A. Evilsizor, and Kenneth A. Evilsizor (collectively, "defendants"). (Id. ¶¶ 3-6). The Copperhill management was aware of Heinemann's disability and that Heinemann traversed the Copperhill property in a wheelchair on occasion. (Id.)

Until May or June of 2005, Copperhill provided Heinemann with a handicapped parking space that was a short, safe distance from his apartment. (Id.) The parking space was located next to a railed ramp, and the space was painted with the traditional markings and colors of a handicapped space. (Id. ¶ 20). The parking space was also marked "handicapped" by a post at the front of the space. (Id.) At this point in time, the space complied with the Americans with Disabilities Act Architectural Guidelines ("ADAAG"). (Id.)

In May or June of 2005, Copperhill repaved the surface of the parking lot. (Id.) After repaving the parking lot, Copperhill management decided not to place the handicapped

---

[3]    The facts herein are based upon the allegations in plaintiffs' First Amended Complaint. (First Am. Compl. ("FAC"), filed August 31, 2007 [Docket #14]).

parking spaces in the same position.  (<u>Id.</u>)  Rather, Copperhill
moved the handicapped parking spaces two-hundred feet away from
where it was previously placed.  (<u>Id.</u>)  Additionally, the new
location of the handicapped parking spaces is atop a hill
approximately fifty to seventy-five feet above the level surface
where the space was formerly located, and it has a steep angle.
(<u>Id.</u>)  Plaintiff alleges that the angle presents a serious danger
to handicapped persons in wheelchairs or those who use prosthetic
limbs, particularly when the pavement is wet.  (<u>Id.</u>)

Heinemann requested on several occasions that Copperhill
move the handicapped parking space back to its original position.
(<u>Id.</u> ¶ 21).  Heinemann spoke with a Copperhill manager and was
told that nothing would be done to accommodate him.  (<u>Id.</u>)
Further, Heinemann alleges that he fell while trying to navigate
the hill and that he informed Copperhill of this fall.  (<u>Id.</u>)
Heinemann also informed Copperhill that the placement of the
handicapped spaces was unacceptable and located in a place too
dangerous for handicapped persons.  (<u>Id.</u>)

Copperhill management told Heinemann that they had obtained
El Dorado County's permission to move the handicapped parking
spaces and that he needed to contact El Dorado County if he
wanted to have it moved.  (<u>Id.</u>)  Subsequently, Heinemann went to
the Building Department in El Dorado County to inquire about the
process of having the handicapped parking spaces returned to
their original position.  (<u>Id.</u> ¶ 22).  The Building Department
gave Heinemann a plot map of the Copperhill Apartments that
showed the original location of the handicapped parking spaces,
but did not show the new location.  (<u>Id.</u>)  The Building

1   Department told Heinemann that there was no evidence that

2   Copperhill had either requested or been granted permission to

3   move the spots. (Id.)

4        Thereafter, Heinemann again confronted Copperhill about the

5   new location of the handicapped parking spaces. (Id.) Heinemann

6   was told that Copperhill did not care what El Dorado County said

7   about the parking spaces and that it would not move the

8   handicapped parking spaces back to their original position.

9   (Id.)

10  B.   Toxic Mold and Water Saturation

11       Plaintiffs Stephen Heinemann and Sharilyn Heinemann[4]

12  (collectively, "plaintiffs") also allege that the Copperhill

13  Apartments were designed, built, maintained, and managed in such

14  a manner that the exterior of the building leaked water into the

15  walls and floors to the point of saturation. (Id. ¶ 23). As a

16  result, molds and fungus permeated the walls, flooring, ceilings,

17  and air ventilation systems. (Id.) Despite plaintiffs' repeated

18  complaints, defendants refused to properly cure the defects

19  within a reasonable time or at all. (Id. ¶¶ 23, 65). Defendants

20  also assured plaintiffs that personal property damaged by water

21  intrusion or mold/fungus contamination would be replaced or

22  cleaned in a manner designed to restore the property to its

23  original condition. (Id. ¶ 24). Defendants failed to perform

24

25

26       [4]   Plaintiffs identify "Marilyn Heinemann" as a new
    plaintiff in the FAC, but identify her as "Sharilyn Heinemann" in
27  the body of the FAC and in the caption of their Opposition to
    defendants' Motion to Dismiss. As such, the court will refer to
28  the new plaintiff as "Sharilyn Heinemann."

                                4

1  remedial measures to restore plaintiffs' contaminated personal
2  property.  (Id.)

3      Plaintiffs contend that the hazardous living condition
4  existed at the time they took possession of the rented property
5  and during their tenancy.  (Id. ¶¶ 23, 64).  Plaintiffs further
6  allege a litany of damages to their health as a result of the
7  mold and/or fungus within their apartment.  (Id. ¶ 70).
8  Plaintiffs also allege that the rental value of the property was
9  diminished and that they are entitled to money damages for the
10 rent they paid.  (Id. ¶ 69).

11 C.   The Litigation

12      On January 2, 2007, plaintiff Stephen Heinemann filed a
13 complaint in this action, alleging violations of state and
14 federal law.  The complaint was dismissed by the court for
15 failure to comply with the requirements of Federal Rule of Civil
16 Procedure 8(a).  On August 31, 2007, plaintiffs filed their First
17 Amended Complaint.  Plaintiff Stephen Heinemann brings claims
18 against all defendants for violations of the Americans with
19 Disabilities Act ("ADA"), violations of the Unruh Civil Rights
20 Act (the "Unruh Act"), violations of California Civil Code § 54,
21 violations of California Health and Safety Code § 19955,
22 violations of California Business and Professions Code § 17200,
23 and negligence, arising out of the new placement of the
24 handicapped parking spaces.  Both plaintiffs bring claims against
25 all defendants for breach of the implied warranty of
26 habitability, fraudulent concealment, and negligent
27 misrepresentation, arising out of the presence of toxic mold and
28 water saturation in their apartment.

5

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged.  See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007).  Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed.  Id.  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema N.A., 534 U.S.

506, 514 (2002) (quoting <u>Hudson v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. <u>See</u> <u>Mir v. Little Co. Of Mary Hospital</u>, 844 F.2d 646, 649 (9th Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United States, Inc.</u>, 12 F.Supp.2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

**A.   Americans with Disabilities Act Claim**

Plaintiff Stephen Heinemann contends that defendants engaged in unfair and unlawful discrimination against him under the ADA by failing to "ensure proper barrier-free access for safe, full and equal use and enjoyment of the defendants' business establishments." (FAC ¶ 25).  Specifically, plaintiff's ADA claim is based upon defendants' placement of the handicapped parking spaces after the parking lot was repaved in 2005. Defendants contend that plaintiff's ADA claim should be dismissed because he fails to comply with the requirements of Rule 8(a) and because he has not alleged facts demonstrating unequal access.

In order to succeed on an ADA claim of discrimination based upon an architectural barrier, plaintiff must demonstrate  "(1) the existing facility at the defendants' place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." <u>Wilson v. Pier 1 Imports (US), Inc.</u>, 439 F. Supp. 2d 1054, 1067 (E.D. Cal. 2006).  A defendant's non-compliance with standards set forth in the Americans with Disabilities Act Architectural Guidelines for

Building and Facilities ("ADAAG") can demonstrate a prima facie

barrier.  Id.  A defendant may rebut this prima facie showing "by

demonstrating that, despite the non-conformance with the

guidelines, the alleged barrier is not actually hindering equal

access by the plaintiff."  Id. (citations omitted).

Plaintiff alleges that the new location of the handicapped

parking spaces does not comply with ADAAG standards.

Specifically, plaintiff asserts that the grade of the hill from

the parking spaces to the building was greater than 1:50 and

"well beyond what is acceptable for an 'accessible' route" under

section 4.3.7 and 4.3.8 of the ADAAG.  (FAC ¶ 28).  Plaintiff

also asserts that he had extreme difficulty walking up and down

the hill and that, on one occasion, he fell.  (Id.)  Plaintiff

contends that this alleged barrier existed on defendants'

property from May or June of 2005.  (FAC ¶ 20).  These

allegations give defendant fair notice of the nature of

plaintiff's claim as well as the grounds upon which the claim

rests.  See Twombly, 127 S.Ct. at 1965 n.3.

Moreover, plaintiff also alleges that the new placement of

the handicapped parking spaces hindered equal access.  Viewing

plaintiffs allegations as true and drawing all reasonable

inferences therefrom, plaintiff's complaint adequately alleges

that the grade of the hill from the spaces to the building

disproportionately affected access by disabled individuals to

defendants' business.  As such, plaintiff has sufficiently

alleged that defendants deprived him of equal access in violation

of the ADA.

**B.     Plaintiff's State Law Claims Arising Out of the Location of the Handicapped Parking Spaces**

**1.     Unruh Civil Rights Act**

Plaintiff Stephen Heinemann brings claims under California's Unruh Act against all defendants based upon the placement of the handicapped parking spaces after defendants repaved the parking lot.  Defendants argue that plaintiff's claim under the Unruh Act should be dismissed because plaintiff fails to allege that Copperhill engaged in intentional discrimination.

The Ninth Circuit has held that where a defendant violates the ADA, damages can be awarded under the Unruh Act regardless of whether a plaintiff can prove intentional discrimination. Lentini v. California Center for the Arts, 370 F.3d 837, 846-47 (9th Cir. 2004).  In 2006, however, a California intermediate appellate court rejected the Ninth Circuit's interpretation of California law in Lentini and held that the Unruh Act required proof of intentional discrimination.  Gunther v. Lin, 144 Cal. App. 4th 223. 252-57 (2006).  Subsequently, at least one federal court has followed Lentini and disregarded Gunther.  Wilson v. Haria & Gogri Corp., 479 F. Supp. 2d 1127, 1135-41 (E.D. Cal. 2007).  Other federal district courts have noted the unsettled nature of this issue.  See e.g., Pinnock v. Safino Designs, Inc., No. 06CV1707L, 2007 WL 2462107 (S.D. Cal. Aug. 28, 2007); Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc., No. 06CV1816, 2007 WL 1989635 (S.D. Cal. July 3, 2007); Wilson v. PFS, LLC, 493 F. Supp. 2d 1122, 1125-26 (S.D. Cal. 2007).

Assuming, without deciding, that plaintiff must plead intentional discrimination under the Unruh Act, under the liberal

notice pleading standards applicable in federal court, plaintiff
has satisfied this burden.  Plaintiff specifically alleges that
defendants' conduct was done intentionally.  (FAC ¶ 34).   In
support of this assertion, plaintiff alleges that he informed
defendants that the new location of the handicapped parking
spaces was unacceptable and dangerous to him as a disabled
individual.  Plaintiff further alleges that defendants lied to
him by stating that El Dorado County had given them permission to
move the spaces.  Plaintiff also alleges that when he confronted
defendants with information obtained from El Dorado County, he
was told that the parking spaces would not be moved.  As such,
assuming plaintiff must meet the more inclusive burden of
pleading intentional conduct, plaintiff's allegations
sufficiently assert that defendants intentionally discriminated
against him.

   **2.   Plaintiff's Third, Fourth, Fifth, and Sixth Claims**

   Plaintiff Stephen Heinemann's remaining state law claims also
arise out of the placement of the handicapped parking spaces.
Defendants generally contend that plaintiff's third, fifth, and
sixth claims should be dismissed on the grounds that plaintiff
does not adequately allege facts sufficient to place them on
notice of the claims against them and the factual basis for the
claims.  However, as set forth above, plaintiff alleges that
defendants denied plaintiff equal access while he lived in the
Copperhill apartments through the placement of the handicapped
parking spaces at the top of a hill that was dangerous to
disabled individuals, particularly when it was wet.  These
allegations are sufficient to state a claim for relief under the

1  applicable liberal notice pleading standard set forth in Rule

2  8(a).

3      Defendants specifically contend that plaintiff's negligence

4  claim should be dismissed because plaintiff's allegations fail to

5  identify how defendants failed to conform to the applicable

6  Uniform Building Codes and fail to identify which Uniform

7  Building Codes are applicable.  Contrary to defendants'

8  assertions, plaintiff alleges that defendants illegally moved the

9  handicapped parking spaces from the location that El Dorado

10 County approved on May 12, 1989.  (FAC ¶ 45).  Plaintiff alleges

11 that the new location of the parking spaces violated the ADA,

12 California Government Code § 4450, California Health and Safety

13 Code § 19955, California Civil Code §§ 52 et seq..  (Id. ¶¶ 44-

14 45).  Plaintiff also alleges that defendants' conduct in moving

15 the handicapped parking spaces without approval by the county

16 violates numerous building codes.  (Id. ¶ 47).  While the

17 allegations are broad in nature, they adequately provide

18 defendants with notice of the nature of and the factual basis for

19 plaintiff's claims against them.

20 **C.   Plaintiffs' State Law Claims Arising Out of the Presence of
        Toxic Mold and Water Saturation**

21

22     Plaintiffs Stephen Heinemann and Sharilyn Heinemann bring

23 claims for breach of the implied warranty of habitability,

24 fraudulent concealment, and negligent misrepresentation based

25 upon the alleged presence of toxic mold and water saturation in

26 the apartment they inhabited that was owned by defendants.

27 Defendants assert that the court lacks subject matter

28 jurisdiction as to Ms. Heinemann and, in the alternative, that

the claims should be dismissed due to insufficient specificity in the first amended complaint.

### 1.  Jurisdiction

This court has original jurisdiction over this action because it involves a question of federal law, namely the ADA. Pursuant to 28 U.S.C. section 1367, district courts have supplemental jurisdiction over *all* claims that are so related to the claims supplying original jurisdiction that they form part of the same case or controversy.  28 U.S.C. § 1367(a) (emphasis added).  Claims are part of the same case or controversy if they arise from a "common nucleus of operative fact" and are such that the plaintiff would ordinarily expect them to be tried in the same proceeding.  United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966).  Further, § 1367(a) provides that "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."  28 U.S.C. § 1367(a); see Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 931 (7th Cir. 1996).  Thus, "[section] 1367(a) permits the adjudication of a claim by a pendent party that neither arises under federal law nor is supported by diversity of citizenship."  Stromberg Metal Works, Inc., 77 F.3d at 931.

Plaintiff Stephen Heinemann's residence in an apartment owned and/or operated by defendants is the basis for his claims under federal and state law relating to both the location of the handicapped parking spaces and the presence of toxic mold. Because there is a common nucleus of operative facts as to all claims arising out of plaintiff's relationship with defendants, the court has supplemental jurisdiction over plaintiff Stephen

Heinemann's state law claims.  Plaintiff Sharilyn Heinemann
shared the same residence that allegedly contained toxic mold.
As such, both plaintiffs' claims arise out of the same conduct by
the same defendants and caused similar harm; therefore, the
factual and legal issues will be nearly, if not completely,
identical.  Therefore, pursuant to § 1367(a), the court has
supplemental jurisdiction over plaintiff Sharilyn Heinemann's
state law claims.

    **2.   Sufficiency of the Allegations**

Defendants assert in the alternative that plaintiffs' state
law claims arising out of the presence of toxic mold should be
dismissed because plaintiffs fail to include sufficient factual
allegations, such as the relationship between the plaintiffs, to
give defendants notice of the claims against them.

Plaintiffs allege that plaintiffs entered into a rental
agreement with defendants, plaintiffs paid rent each month to
defendants while they occupied the apartment, and that defendants
allowed "water intrusions to exist" within their apartment.  (FAC
¶¶ 1; 62-63).  A fair reading of the complaint reveals that
plaintiffs shared residence in the apartment owned by defendants.
Plaintiffs allege that at the time they took possession and/or
during the time of their tenancy, they were subjected to
defective and dangerous conditions due to the presence of toxic
mold and water saturation.  (FAC ¶ 64).  Plaintiffs also allege
that they repeatedly informed defendants of these defective and
dangerous conditions, but that defendants failed and refused to
repair the conditions.  (FAC ¶ 65).  As such, plaintiffs have
alleged who they are, what the conduct at issue was, when the

13

conduct occurred, and how they were damaged by the conduct. Therefore, plaintiffs' allegations have adequately provides defendants with notice of the nature of and the factual basis for the claims against them.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiffs' First Amended Complaint is DENIED.

IT IS SO ORDERED.

DATED: November 30, 2007.

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

14